**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| V. | § | 5:00-CR-9(6) |
| | § | |
| **JOE WASHINGTON** | § | |

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

On April 20, 2006, the Court held a hearing on the Government's Petition to Revoke Supervised Release. The Government was represented by Assistant United States Attorney Barry Bryant. Defendant was represented by John Stroud.

Defendant was sentenced on August 1, 2001, before The Honorable David Folsom of the Eastern District of Texas after pleading guilty to the offense of distribution of cocaine base, a Class B felony. This offense carried a statutory maximum imprisonment term of 40 years. The guideline imprisonment range, based on a total offense level of 25 and a criminal history category of III, was 70 to 87 months. The Court determined that the criminal history III overstated the seriousness of Defendant's criminal history and departed to category II. The Court considered the five months Defendant served in custody at the local jail for which he received no credit from any jurisdiction. Defendant was subsequently sentenced to 60 months imprisonment to be followed by a four-year term of supervised release subject to the standard conditions of release, plus special conditions to include drug aftercare, a $100 special assessment, and the denial of federal benefits for a period of five years. On July 21, 2005, Defendant completed his period of imprisonment and began service of the supervision term.

On April 19, 2006, the instant petition to revoke was filed. In its petition, the Government alleges Defendant violated the following conditions:

1) Defendant shall permit a probation officer to visit at any time at home or elsewhere. Specifically, the Government alleges on April 11, 2006, the U.S. Probation Office conducted an unscheduled visit with Defendant at his brother's residence located at 1008 Cedar Street in Texarkana, Texas. Defendant was located lying down inside the residence on a couch. The U.S. Probation Office noticed that Defendant had blood shot eyes and a strong odor of alcohol about his person. Defendant was instructed to remain at the residence while the U.S. Probation Officer stepped outside to that officer's vehicle to get a breathalyzer in order to get an alcohol breath test from Defendant. Upon the U.S. Probation Officer re-entering the residence, Defendant was no where to be found in the house. It was apparent that Defendant had exited the house and ran away from this officer, therefore prohibiting this officer from concluding the visit and the inquiry into his conduct.

2) Defendant shall participate in a program of testing and treatment for drug abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer. Defendant shall follow the instructions of the probation officer. Specifically, the Government alleges on Aril 11, 2006, the U.S. Probation Office instruction Defendant to provide a breath sample for alcohol use testing. Defendant replied several times that he "was not going to give a breathalyzer test." Defendant was instructed that a breath sample was going to be obtained from him once the breathalyzer was retrieved from the officer's vehicle parked outside. While the U.S. Probation Officer was in the process of getting the breathalyzer, Defendant left the residence on foot, therefore, failing to submit to a breathalyzer test as instructed.

3) Defendant shall refrain from excessive use of alcohol. Specifically, the Government alleges on July 22, 2005, Defendant was informed that the term "excessive use" will be defined by the U.S. Probation Office in this case to mean as much as one alcoholic beverage. On January 10, 2006, the Court concurred with the office's definition in this case. Defendant violated this condition on November 5, 2005, at approximately 8:30 a.m. when the U.S. Probation Office observed him holding a beer bottle in his hands at his brother's residence. Upon noticing the officer's vehicle, Defendant tried to conceal his passing of the beer bottle to the driver of a vehicle that had just pulled up. Defendant subsequently admitted that the beer was his and he had just started drinking it.

Defendant also violated this condition on April 11, 2006, at approximately 5:30 p.m., when the U.S. Probation Office made contact with him at his brother's residence. Defendant was lying down on a couch with a blanket over his head. When asked to remove the blanket, Defendant only moved it to where this officer could see his eyes and kept his mouth covered. The U.S. Probation Officer noticed that his eyes were blood shot and could smell a strong odor of alcohol about Defendant. He denied consuming alcohol; however, he fled the residence when this office instructed him to provide a breath sample for alcohol testing. After Defendant had fled the residence, the U.S. Probation Office spoke with his brother, Kelvin Washington, who stated that he had seen Defendant drink two to three beers on this date.

4) Defendant shall answer truthfully all inquiries by the probation officer. Specifically, the Government alleges on April 11, 2006, Defendant was asked if he had consumed any alcohol on this date, and he stated that he had not. After Defendant fled the residence, the U.S. Probation Office spoke with his brother, Kelvin Washington, who reported that he had seen Defendant consume two to three beers on this date. Defendant also violated this condition on April 11, 2006, when he was

asked why he was walking with a limp. He reported that he hurt his ankle playing basketball the previous weekend. Later that date, the U.S. Probation Office was speaking with his brother who reported that he had hurt his ankle driving a motorcycle and wrecking it in his driveway this past weekend.

Defendant also violated this condition on February 1, 2006, when he was asked where he was staying at night. This question was asked because the U.S. Probation Office had conducted visits at his listed address on dates including October 13th & 19th, November 5th & 10th; December 6th & 13th, 2005, and January 18th, 2006, all during times when he would be expected to be home at which our office either made no contact with anyone or did make contact with a family member who stated that he did stay there but there were some nights he would not come home. When Defendant initially responded to the question, he reported that he always stayed at his listed residence. When informed that his family members reported there were nights he was not present, he then stated that he sometimes stayed at his brother's residence. Defendant reported that these were the only two places that he stayed. Defendant was not aware at the time but the U.S. Probation Office had information that he was staying at a female's residence located at Sunset Apartments, Building 2 in apartment #140. An unannounced visit was conducted at this address the morning of February 18, 2006, at which time Defendant was located at the residence where he had spent the night before. Ms. Jones, the female he was staying with, confirmed that he had stayed there on several occasions.

The Court scheduled a revocation hearing April 20, 2006. At the hearing on the Government's petition and after consenting to the undersigned's taking the plea, Defendant pled true to allegations as set forth above. Based upon Defendant's plea of true to the allegations and with no objection by the Defendant or the Government, the Court found Defendant violated his conditions

of supervised release as alleged in the U.S. Probation Office's violation petition. The Court thereafter recommended Defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of seven (7) months with no term of supervised release to follow such term of imprisonment. The Court further recommended the Court request that Defendant be allowed to serve his term of imprisonment at the Texarkana Federal Correctional Institute and that Defendant receive alcohol treatment while he is serving the term of imprisonment. Based on the foregoing, it is

**RECOMMENDED** that Defendant's plea of true to the allegations as set forth in the Government's petition be **ACCEPTED**. Further, it is

**RECOMMENDED** that Defendant's supervised release be **REVOKED**. Further, it is

**RECOMMENDED** that Defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of seven (7) months with no term of supervised release to follow such term of imprisonment. It is further

**RECOMMENDED** that the Court request that Defendant be allowed to serve his term of imprisonment at the Texarkana Federal Correctional Institute and that Defendant receive alcohol treatment while he is serving the term of imprisonment.

The parties were informed of the right to file objections to the recommendations as set forth above. Both parties waived their objections.

**SIGNED this 21st day of April, 2006.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE